ELLIS SHRIVER, APPELLEE, v. WILLIAM E. McCLOUD,
APPELLANT.

1. **Trial**: EVIDENCE. The evidence examined and found suffi-
cient to sustain the finding and judgment.

2. **Partnership.** A partnership formed for the purpose of carry-
ing on a legitimate business, such as buying and shipping fat
cattle, will not be held illegal, immoral, or *contra bonas mores*,
by reason of *sharp* or fraudulent practices used or suffered by
the parties in the prosecution of such business.

3. ———: EVIDENCE. Where it is equally the duty of each mem-
ber of a partnership to see that the certificate of such partner-
ship is recorded, as required by law, neither one of the part.
ners can avail himself of the failure to perform such duty in an
action between such partners.

4. ———: ———. As between partners, the ultimate facts whence
a partnership is deduced are, first, the agreement, and, second,
its execution; summed up as the executed agreement. *Grover
v. Tallman*, 8 Nev., 78.

APPEAL from the district court of York county. Heard
below before NORVAL, J.

*France & Harlan* and *John H. Ames*, for appellant.

*Sedgwick & Power*, for appellee.

COBB, J.

The petition in the court below alleged "That in the
month of March, 1883, the plaintiff entered into an agree-
ment with the defendant to form a partnership with him
in the business of buying cattle, in York county, in this
state and vicinity, and shipping the same. The terms of
said agreement being, in substance, as follows: The plain-
tiff to furnish the capital and devote so much of his time
to said business as might be necessary, and the defendant
to devote his time to said business and furnish a horse and
buggy to be used in said business, and the plaintiff and

defendant to share in the profits and losses of said business.
equally, the said partnership to continue during the spring
of the year 1883.

" 2. And the plaintiff and defendant then entered upon
and carried on said co-partnership business under said
agreement until the same was terminated on or about July,.
1883, and said co-partnership was terminated prior to the
1st day of May, 1883.

" 3. And during the continuance of said.co-partnership.
this plaintiff was compelled to and did advance and pay on
account of said co-partnership business the sum of $8,502.-
53, and has received from said co-partnership business the
sum of $7,064.50 and no more.

4. That said defendant has not paid or advanced on ac-
count of said co-partnership business any sum whatever·
in excess of the amount that said defendant has received
from the said business of the co-partnership," with an al-
legation of a demand upon said defendant for an account-
ing and payment of the amount due him, and a prayer for·
an accounting and judgment and general relief.

The defendant answered with a general denial.

There was a trial to the court, with a finding and judg-
ment for the plaintiff. The defendant brings the cause to·
this court by appeal.

There is no assignment of errors.

It appears from the bill of exceptions that there was:
evidence tending to prove that in the month of ' March,
1883, the defendant, a resident of York county in this.
state, wrote to one Wade, of Chicago, a salesman of live
stock, with whom he had been acquainted for about fifteen·
years, to the effect that there was a number of cattle being·
fed in his, McCloud's, county, and that he thought that
the cattle could be bought right, and that he wanted Wade·
to come out there, or send some good man there, to go in
with him and buy the cattle, that he felt a little rusty in
regard to cattle, as he had not been shipping much lately.

Wade shortly afterwards wrote to Shriver, the plaintiff, at Harvard, Iowa (whom he had also known for about fifteen years), the contents of McCloud's letter. A few days thereafter Shriver went into Chicago with cattle, and Wade talked with him as to what McCloud had written. Shriver enquired about McCloud, and said he would go out (to Nebraska), and Wade gave him a letter of introduction to McCloud. The evidence also tends to prove that soon after the above occurrence Shriver came to Waco (the residence of McCloud), met McC., and delivered to him the letter of introduction from Wade. That this letter contained a statement that Shriver came out there for the purpose of going into partnership with him to buy some cattle. That upon receiving the letter of introduction, McCloud took Shriver to his house with him, and as to what took place between the parties on that evening at the house of McCloud, while the evidence is conflicting, it tends to prove that they then and there entered into a co-partnership for the purpose of buying and shipping cattle. The terms of this partnership, though not very definite, were, I think, sufficient for the purpose in view. By its terms Shriver was to furnish the cash capital to pay for the stock to be purchased. Part of this money he claimed to have with him, and had, so far as appears, and part he professed to be able to obtain from Wade or the firm of which he was a member or employe, and McCloud was to furnish teams for the purpose of local travel and pay the local expenses of the business, and the two partners would share the profits and losses. The evidence tends to prove that the next day after entering into the said agreement of partnership, Shriver and McCloud together entered upon the business of looking up and buying cattle, that at the suggestion and request of McCloud the contracts of purchase were made in the name of Shriver alone, and nothing was said about McCloud being interested in such purchases, but that he nevertheless was a full partner therein.

In this manner the firm purchased and shipped three ship-
ments of cattle, and made an advancement to Harvey
Pickrel on a bunch of cattle of $400, which they forfeited.
In these operations they lost, as found by the court, the
sum of $1,425.08. All of which was made good and paid
by the plaintiff.

It cannot be denied that there is conflicting evidence
upon the most material point in the case—the formation
of the partnership between the parties. The agreement
of partnership, as found by the court, took place between
them without the presence of any third person, and is evi-
denced by no writing then executed. It is sworn to by
one party and denied by the other. In such cases the dis-
agreeable duty devolves upon the trial court or jury to
decide which to believe and which to charge with the in-
firmity of a bad memory, or that obliquity of perception
into facts unfavorable to their own side, which sometimes
exists in parties to law suits. This duty is often imposed
upon courts and juries, when there are no outside or collat-
eral facts in the case to point out the party whose witnesses
are most reliable; but in the case at bar, the trial court,
to whom the facts were submitted, found much to aid
him in the contemporaneous and antecedent acts of the
defendant. The letters of the defendant to Mr. Wade, as
deposed to by the latter, show clearly that shortly before
the first visit of Shriver to Waco, McCloud desired and
solicited Wade "to come out there, or send some good
man there, to go in with him and buy the cattle," refer-
ring to cattle which he had already informed Wade were
being fed in York county for the Chicago market. Now
this independent circumstance was an important aid to the
court in determining between the conflicting statements of
Shriver and McCloud, whether, upon the former, a few
days thereafter, calling upon the latter at his home with a
letter of introduction from Wade, their talking over the
matter of the cattle being fed in the neighborhood during

the evening, and in the morning going out among the cattle feeders and buying quantities of cattle on that and succeeding days, the cattle were purchased in pursuance of a contract of partnership for that purpose, formed on the evening of the first meeting and conversation, at the house of McCloud, or that McCloud was not interested in such purchases but was only conveying Shriver around through the cattle feeding region of York county, with a view of picking up a few stock cattle to feed himself. Upon the other hand, the fact that the written contracts of purchase of the cattle purchased were made in Shriver's individual name, was a circumstance against him to be considered by the trial court. Whether that circumstance is sufficiently explained by the statement of Shriver in his testimony, that when they first started out to buy cattle, as they were riding along, he (McCloud) said, "Shriver, I would prefer to be a silent partner in the business for a while. I think it would be the best way to buy the cattle, for me to take you around and introduce you to the people as my friend from Iowa, and for me to leg around the corner for you, and try to induce them to sell to you; he says, 'you do the buying and I will try to get them to sell to you. I am acquainted with a good many people that are feeding cattle.' I says to him, 'you are acquainted with the business, and I will leave that to you, to do whatever you think is best.'" This was a question for the trial court to determine from all the facts in the case.

Before passing from this branch of the case, I will consider the fourth point of appellant's brief, which refers to the above testimony of Shriver. Counsel say in the brief, "It is a fundamental principle of law that he who seeks equity must do equity. The evidence of plaintiff, Shriver, shows that he entered into a corrupt agreement with defendant, McCloud, to cheat and defraud the citizens of York county. They were to tell the citizens who had cattle to sell that McCloud was not a partner, but was going

around with Shriver to introduce him and advise the citizens to sell, or in the language of Shriver:

"Q.   Did McCloud say to Morrison that he did not have anything to do with this matter, but that they had better sell to you, that you were offering big prices?

"A.   Why, he may have said that; that was the agreement, that he was to leg around the corner; he was to try to get them to sell and I was to buy.

"Q.   You in his presence did not contradict that?

"A.   No, sir.

"Q.   Did he talk that generally wherever you went?

"A.   Wherever we went."

Had these parties really defrauded any of the people of whom they bought cattle and a question had arisen between such persons and the alleged partnership or either member of it, then probably the above evidence would have tended to estop them to allege a partnership.   But not in a controversy between the partners.   The evidence does not tend to prove that the object and purposes of the partnership or business in which it was to engage were either illegal, immoral, or *contra bonas mores,* nor that the peculiar manner in which the business was conducted was at all contemplated in the formation of the partnership; and when the business resulted in a loss, to allow a member of the firm to avoid his share of the consequences through the consideration of a mere sharp practice used in the manner of prosecuting the business, devised and suggested by himself, is a proposition which needs only to be stated.

Much in a line with the above is appellant's second point, to the effect that the plaintiff ought not to have been allowed to set up and prove a partnership between himself and the defendant, there being no record of the same; and he cites sections 27, 28, and 29, chap. 65, Comp. Stats. I do not think that these sections have ever been construed by the supreme court, and it is not my purpose to discuss them now, further than to say that if they are at all appli-

cable to a partnership doing business in the name of one or all of the partners, it is very sure that its provisions cannot be invoked by one of the partners who is in *pari delicto* with the others.

Appellant's first point is directed to the plaintiff's petition, claiming that it does not state facts sufficient to con stitute a cause of action. First, under this head, that it does not state in terms that the parties were partners. When it is borne in mind that pleadings consist in the allegation of facts, and not in the statement of conclusions, and the petition is examined as to its contents, it will be seen that under our liberal system of pleading it is sufficient as to the point we are now considering. By reference to the petition copied in the fore part of this opinion, it will be seen that after the allegation of an agreement entered into between the plaintiff and the defendant "to form a partnership in the business of buying cattle in York county, Nebraska, and vicinity, and shipping the same," and setting out the terms of the agreement; then follows the allegation that "the plaintiff and defendant then entered upon and carried on said co-partnership business, under said agreement, until the same was terminated, on or before the first day of July, 1883, and said co-partnership was terminated prior to the first day of May, 1883 (?)" This is an allegation of all the provable facts necessary to the conclusion of fact and of law, that the parties were partners for a time, and that such partnership had been dissolved. Any further allegations that they were partners would only be to state a conclusion, only to *label* the relationship which the facts stated show that they bore towards each other. See *Grover v. Tallman,* 8 Nev., 178, cited by counsel for appellant. This also answers the succeeding suggestion that the petition fails to allege the dissolution of the co-partnership. I do not understand that in this case it was necessary to allege the existence of unsettled accounts other than that due the plaintiff. There were no unsettled demands

outstanding against the partnership, strictly speaking, and the balance claimed by the plaintiff is sufficiently stated.

The third point made by counsel for appellant is that the partnership, if any existed between the parties, was only in a single adventure, for which Shriver furnished the capital, and McCloud the labor and skill, the property in which the capital was invested remaining the property of Shriver, and McCloud to have a share of the profits in the nature of compensation for his labor and skill, in which case he would not be liable for any part of the losses. To this he cites *Heran v. Hall*, 35 Am. Dec. (1 B. Mon., 159), 178. Were the point and authority applicable to the case at bar, it would be conceded. But the case at bar is not one of a single adventure, and according to Story (Story on Part., § 27, also cited by counsel for appellant), even in case of a single adventure, and the whole capital is furnished by one party, it requires a special agreement to prevent the conclusion of a community of interest in the property as well as in the profit and loss.

I therefore reach the conclusion that a cause of action is stated in the petition, and that the evidence is sufficient to sustain the finding and judgment.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

The other judges concur.